IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

**JOANNA KAY WYANT,**

    **Plaintiff,**

**v.**                                                                          **Civil Action No. 2:12-cv-02039**

**MICHAEL ASTRUE**
**COMMISSIONER OF**
**SOCIAL SECURITY[1],**

    **Defendant.**

**PROPOSED FINDINGS AND RECOMMENDATION**

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-433.

This case was referred to this United States Magistrate Judge to consider the pleadings and evidence and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B).  Presently pending before the Court are Plaintiff's Brief in Support of Judgment on the Pleadings (ECF No. 10) and a Brief in Support of the Defendant's Decision (ECF No. 12).

Plaintiff, Joanna Kay Wyant, filed her application for disability insurance benefits on May 17, 2010 (Tr. at 133-134). In the application, Complainant alleged disability beginning May

---

[1]On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security.  Under Fed. R. Civ. P. 25(d)(1) and 42 U.S.C. § 405(g), Carolyn W. Colvin is automatically substituted as the defendant in this action.

1

7, 2010 (Tr. at 135-136). The claim was denied initially and upon reconsideration (Tr. at 76-80, 86-88). Claimant filed a request for hearing on March 17, 2011 (Tr. at 89-90). A hearing was held on August 31, 2011, before Administrative Law Judge Harold J. Barkley III. In the Decision dated September 9, 2011, the Administrative Law Judge (ALJ) determined that Claimant was not entitled to social security benefits (Tr. at 9-11). On October 24, 2011, Claimant requested a review of the hearing decision (Tr. at 7). The Appeals Council received additional evidence from Claimant and made it part of the record, marked as Exhibit 15E (Tr. at 5). The Appeals Council notified Claimant on April 24, 2012, that his request for review was denied (Tr. at 1-3). On June 13, 2012, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). Plaintiff's Brief in Support of Judgment on the Pleadings was filed on September 22, 2012 (ECF No. 10). The Commissioner filed a Brief in Support of the Defendant's Decision on October 19, 2012 (ECF No. 11).

Under 42 U.S.C. § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520, 416.920 (2012). If an individual is found "not disabled" at any step, further inquiry is unnecessary. *Id*. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. *Id*. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is

whether claimant suffers from a severe impairment. *Id*. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. *Id*. § 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. *Id*. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. *Id*. § 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983) and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2012). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity since the alleged onset date (Tr. at 14). Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of osteoarthritis, bilateral knees, sleep apnea, bipolar disorder, depression and anxiety. (*Id.*) At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1 (Tr. at 17). The ALJ found that Claimant has a residual functional capacity (RFC) for light work, reduced by nonexertional limitations[2] (Tr. at 24-25).

---

[2] Claimant has the residual functional capacity to lift up to 20 pounds occasionally, lift and carry up to 10 pounds frequently in light work as defined by the regulations. She is able to stand or walk for

3

As a result, Claimant cannot return to her past relevant work (Tr. at 24). Nevertheless, the ALJ concluded that Claimant could perform jobs such as price marker, hand packer, assembler and grader/sorter (Tr. at 25). A Vocational Expert (VE) testified at the administrative hearing that the above stated positions exist in significant numbers in the national economy (Tr. at 25, 65-69). On this basis, benefits were denied (Tr. at 26).

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In *Blalock v. Richardson*, substantial evidence was defined as:

> Evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational. *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

---

approximately 2 hours per 8 hour workday and sit for approximately 6 hours per 8 hour workday, with normal breaks. She can occasionally climb ramps and stairs, stoop, crouch and kneel, but may never climb ladders, ropes or scaffolds, or crawl. She is allowed to sit or stand alternatively at will provided that she is not off task more than 10% of the work period. She must avoid concentrated exposure to extreme heat and cold, wetness or humidity and excessive vibration as well as irritants such as fumes, odors, dusts, gases and poorly ventilated areas. She must further avoid all exposure to hazards such as moving machinery and unprotected heights. She is fully capable of learning, remembering and performing simple, routine, repetitive tasks, which involves only occasional interaction with the public and co-workers and the work is isolated with only occasional supervision.

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on July 14, 1963. Claimant graduated high school and in 1997 completed a 9 month program for medical assisting at West Virginia Career College (Tr. at 188). Claimant worked as an accounts receivable specialist for 7 years for Behavioral Healthcare for Children and Adults. She also has past work experience as a business services specialist, data entry operator and medical assistant (Tr. at 188-189). In an assessment for the Beacon Outpatient Program at Thomas Memorial Hospital, Claimant indicated that she was independent in every ability in the section of "functional abilities" (Tr. at 642). The functional abilities included preparing basic meals, maintaining proper hygiene and grooming, schedule appointments, arranging her own transportation, completing household tasks, laundry and cleaning, running errands and grocery shopping, maintaining relationships, managing money and setting goals. (*Id.*)

Medical Record

    A. Prior to the disability onset date of May 7, 2010

On January 30, 2003, George Zaldivar, M.D. examined Claimant and noted that she weighed 230 pounds and stood at 5 feet 2 inches (Tr. at 268-269). Claimant reported to Dr. Zaldivar that she has problems staying asleep throughout the night. She also informed Dr. Zaldivar that she drinks as much as a case of caffeinated pop a day (Tr. at 268). Claimant participated in an overnight sleep study. On February 10, 2003, Dr. Zaldivar's impression from the sleep study's results was that claimant suffers from sleep apnea (Tr. at 281-282).

5

Nancy Dunn, APRN, examined Claimant on July 8, 2009, at Thomas Memorial Hospital due to right lower extremity pain and cellulitis (Tr. at 329). On July 29, 2009, Claimant reported that a rash on her right leg causes her to scratch at the area. She was assessed as having "skin infection from scabies mites" (Tr. at 357). At a follow-up appointment on August 24, 2009, Claimant weighed 328 pounds. Claimant had sores on her legs. Claimant was assessed to have hyperthyroidism, diabetes, hypertension and hypercholesterolemia (Tr. at 355).

On October 27, 2009, Michele L. Warren, MSN, APRN-BC, completed a psychiatric intake evaluation (Tr. at 314-325). Claimant reported she was depressed after her mom passed away. She asserted that her job is very stressful and that she feels like her boss is picking on her. Claimant reported that she had difficulty sleeping at night. At the administrative hearing, Claimant testified to falling asleep at work because she wasn't sleeping at night (Tr. at 44). Claimant asserted that she has trouble controlling her anger and feels sad and down most of the time (Tr. at 314). Ms. Warren diagnosed Claimant as suffering from depressive disorder and anxiety disorder (Tr. at 316).

Claimant saw Ms. Warren again on November 17, 2009 (Tr. at 318-320). Claimant reported that she was written up at work and almost fired. Claimant was still depressed but denied any suicidal thoughts or hallucinations (Tr. at 318). On February 10, 2009, Claimant reported to Ms. Warren that she had been written up again at work and is afraid her workplace is trying to find a way to fire her (Tr. at 322).

On December 29, 2009, notes from Claimant's follow-up visit with Ms. Warren state that Claimant was complaining about her supervisor at work. Claimant's mental status was described as friendly, attentive, communicative, casually groomed, overweight and relaxed. Mood and

6

anxiety had improved to the point the notes stated that "there are no signs of anxiety" (Tr. at 320).

On January 7, 2010 to January 12, 2010, Claimant was admitted as a patient at Thomas Memorial Hospital in South Charleston, West Virginia, due to severe chest pain. Claimant's diagnosis at her time of discharge included chest pain, bilateral pneumonia, thyroid nodule, fluid overload, diabetes, hypertension, hyperlipidemia, depression, anxiety, sleep apnea and morbid obesity. On February 10, 2010, Claimant complained again to Ms. Warren that work wasn't going well, she had been written up and felt as if she was going to be fired. She felt like her boss was micromanaging her which was causing her to feel anxious and feel like scratching herself (Tr. at 322). The mental status notes reflect that Claimant was not depressed or anxious and her recent and remote memory were intact. (*Id.*)

Claimant chose to participate in an employee assistance program to see a therapist. Claimant enrolled in the Beacon Program on an outpatient basis and received one-on-one counseling from Larry McNeely, LPC. After contemplating suicide because her supervisor criticized her work, Claimant contacted Mr. McNeely who convinced her to go to Thomas Memorial Hospital's emergency room (ER). Claimant took family/medical leave[3] from work beginning February 19, 2010, ending March 29, 2010, to participate in the outpatient program (Tr. at 613).

During a counseling session at the Beacon Program on April 12, 2010, Claimant stated that she interviewed for a job the day before (Tr. at 625). At a Beacon Program counseling session on April 16, 2010, Claimant reported that she had submitted her resume to an employer

---

[3] Claimant took leave under the Family Medical Leave Act which entitles eligible employees of covered employers to take unpaid, job-protected leave for specified family and medical reasons with continuation of group health insurance coverage under the same terms and conditions as if the employee had not taken leave. Eligible employees are entitled to 12 workweeks of leave in a 12 month period for a serious health condition, among other things. *See*, The U.S. Department of Labor's Family and Medical Leave Act of 1993 (FMLA).

7

(Tr. at 621). At the administrative hearing, Claimant testified that she considered finding another job but "it just got too much and I wasn't having any luck" (Tr.at 49).

On May 7, 2010, Claimant quit her job with Kanawha Behavioral Health (Tr. at 42-43). Claimant's Disability Report asked her to list all of the physical or mental conditions that limit her ability to work. Claimant listed the following conditions on the form: bipolar, depression, diabetes, sleep apnea, chronic anemia, lichen simplex chronicus, osteoarthritis in knees, migraines, neuropathy and cellulitis in right and left lower extremities (Tr. at 187). Claimant stated her weight was 304 pounds. Claimant filed her application for disability insurance benefits on May 17, 2010 (Tr. at 133-134). In the application, Complainant alleged disability beginning May 7, 2010 (Tr. at 135-136).

Claimant asserted at the administrative hearing that "she left her job because she couldn't handle the stress and even though she was thinking about looking for other jobs, the very aspect of doing that exacerbated her stress" (Tr. at 39). When asked under oath if losing her job "set off the cycle" of why she became disabled, Claimant testified "Well, I guess – I don't know what it all started from, but what boiled it down to was me and the supervisor never did really see eye-to-eye" (Tr. at 44).

B. <u>After the disability onset date of May 7, 2010</u>

West Virginia Disability Determination Service performed A Mental Status Examination of Claimant on May 20, 2010 (Tr. at 468-74). Lester Sargent, M.A., performed the mental examination. Under the section of Claimant's chief complaint, the examination reported:

> The claimant is applying for benefits because, "I quit. I couldn't stand the pressure and the stress anymore. I had a backstabbing boss that put me under a lot of stress. I have lichen simplex chronicus and I scratch myself until it turns into a sore. I have diabetes. I have neuropathy in my feet. I can't stand very long.

8

> My back hurts. I have got a pituitary tumor and I have been depressed for years."

Dr. Sargent's mental status examination of Claimant found that her immediate and recent memory was severely deficient and her remote memory was mildly deficient.

Larry C. McNeely, LPC reviewed Claimant's impairments for the State of West Virginia's Disability Determination Section on July 15, 2010 (Tr. at 451-454). The mental examination found Claimant's mental status normal in speech, judgment, insight, thought content and perception. Claimant's immediate and recent memory were normal. Dr. McNeely found Claimant's mood to be depressed. Claimant's psychomotor activity was within normal limits. Her social functioning, concentration and task persistence were rated mildly deficient. (*Id.*)

Claimant sought treatment at Cabin Creek Health Center on June 28, 2010. Claimant reported that she recently lost her insurance and needed to seek treatment at the Cabin Creek facility (Tr. at 579). Claimant had a follow-up visit on August 24, 2010 (Tr. at 575). Cabin Creek Health Center's notes stated the Claimant's depression was stable but she still felt stressed over her daughter. Claimant had an appointment scheduled with a surgeon to biopsy a thyroid nodule and was seeking treatment for a rash in her groin area because the hot weather was making the rash worse. (*Id.*) Treatment notes from Cabin Creek Health Systems on September 22, 2010 and October 19, 2010, indicate Claimant had not been checking her blood sugar (Tr. at 570, 572). On October 19, 2010, Claimant weighed 289 pounds. She reported that she had been watching her diet closely and had cut back on fast food (Tr. at 570).

On October 29, 2010, State agency physician Rabah Boukhemis, M.D., conducted a Physical Residual Capacity Assessment (Tr. at 482-490). The primary diagnosis was morbid obesity. Dr. Boukhemis found that Claimant could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk at least 2 hours in an 8 hour workday,

9

sit for a total of about 6 hours in an 8 hour workday and that her exertional limitations to push and/or pull were unlimited (Tr. at 483). Claimant could occasionally climb ramps/stairs, balance, stoop, kneel and crouch (Tr. at 484). She could never climb ladders/ropes/scaffolds and never crawl.

On January 11, 2011, Claimant reported to Cabin Creek Health Services that she hadn't been checking her blood sugar (Tr. at 565). On February 16, 2011, state agency physician Amy Wirts, M.D., reviewed Claimant's medical evidence and affirmed Dr. Boukhemis' Physical Residual Capacity Assessment (Tr. at 560). On August 27, 2011, Sheila Emerson Kelly, M.A., performed a psychological evaluation of Claimant (Tr. at 654-664). During the evaluation, Claimant reported that even though she is diabetic, she admits that she has an addiction to sweets, particularly chocolate (Tr. at 657). On the mental status examination, Claimant only recalled one out of three objects to be recalled from memory after five minutes (Tr. at 660). Claimant's Residual Functional Capacity included daily living activities of sharing household responsibilities, cooking, attending church, maintaining her checking account and playing with her granddaughter. Claimant's hobbies include reading novels, crocheting and spending the vast majority of her free time on the computer in chat rooms on the internet and on the website www.http://facebook.com[4] (Tr. at 662). Dr. Kelly found Claimant "certainly competent to manage her own financial affairs" (Tr. at 663).

Claimant's Challenges to the Commissioner's Decision

Claimant asserts the ALJ erred in finding that Claimant's obesity was a non-severe impairment and the ALJ failed to adequately assess the impact of obesity on her other

---

[4] Dr. Kelly states in Claimant's Residual Functional Capacity section of the psychological evaluation that in regards to social functioning, Claimant appears to have an active fantasy life with little actual social interaction outside [chat rooms and Facebook] (Tr. at 662).

impairments (ECF No. 10). The Commissioner argues that the ALJ properly analyzed Claimant's obesity (ECF No. 12).

Obesity

The Social Security Administration has issued a ruling, SSR 02-1p, to provide guidance on the evaluation of obesity in disability claims. Obesity is a severe impairment when, alone or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities. Because there is no listing for obesity in the Code of Federal Regulations, an individual with obesity will be found to meet the requirements of a listing if the individual has another impairment that, by itself, meets the requirements listing.

Claimant was obese before her disability onset date of May 7, 2010. Medical Records and exhibits in the present case indicate Claimant has been obese at least since 2003. The ALJ found that Claimant's obesity did not significantly limit her ability to work. Medical records and testimony demonstrate that Claimant worked while she was obese.

Evaluating Mental Impairments

The five-step sequential evaluation process applies to the evaluation of both physical and mental impairments. 20 C.F.R. § 416.920a (a) (2012); 20 C.F.R. § 404.1520a (a) (2012). In addition, when evaluating the severity of mental impairments, the Social Security Administration implements a "special technique," outlined at 20 C.F.R. §§ 404.1520a and 416.920a. *Id.* First, symptoms, signs and laboratory findings are evaluated to determine whether a claimant has a medically determinable mental impairment. §§ 404.1520a(b)(1) and 416.920a(b)(1) (2012). Second, if the ALJ determines that an impairment(s) exists, the ALJ must specify in his decision the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s).

§§ 404.1520a(b)(1) and (e), 416.920a(b)(1) and (e) (2012). Third, the ALJ then must rate the degree of functional limitation resulting from the impairment(s). §§ 404.1520a(b)(2) and 416.920a(b)(2) (2006). Functional limitation is rated with respect to four broad areas (activities of daily living, social functioning, concentration, persistence or pace, and episodes of decompensation). §§ 404.1520a(c)(3) and 416.920a(c)(3) (2012). The first three areas are rated on a five-point scale: None, mild, moderate, marked and extreme. The fourth area is rated on a four-point scale: None, one or two, three, four or more. §§ 404.1520a(c)(4) and 416.920a(c)(4)(2012). A rating of "none" or "mild" in the first three areas and a rating of "none" in the fourth area will generally lead to a conclusion that the mental impairment is not "severe," unless the evidence indicates otherwise. §§ 404.1520a(d)(1) and 416.920a(d)(1) (2012). Fourth, if a mental impairment is "severe," the ALJ will determine if it meets or is equivalent in severity to a mental disorder listed in Appendix 1. §§ 404.1520a(d)(2) and 416.920a(d)(2) (2012). Fifth, if a mental impairment is "severe" but does not meet the criteria in the Listings, the ALJ will assess the claimant's residual functional capacity (RFC). §§ 404.1520a(d)(3) and 416.920a(d)(3) (2012). The ALJ incorporates the findings derived from the analysis in the ALJ's decision:

> The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

§§ 404.1520a(e)(2) and 416.920a(e)(2) (2012).

In this decision, the ALJ found that Claimant has no restrictions in activities of daily living (Tr. at 18). In social functioning, concentration, persistence and pace, the ALJ opined that Claimant has moderate difficulties. Claimant is able to shop for groceries and clothing. She

visits her daughter and attends church on a regular basis. With regards to concentration, Claimant asserts that she needs to be reminded to take her medication, however, she possesses the concentration necessary to count change, manage her checking account and interact in chat rooms and on Facebook. As for episodes of decompensation, the ALJ found the Claimant has experienced one or two episodes of decompensation. Furthermore, Claimant's severe impairments of osteoarthritis, bilateral knees, sleep apnea, bipolar disorder, depression and anxiety have not caused more than a minimal limitation of Claimant's ability to do basic work activities.

The Claimant argues that her obesity exacerbates her physical impairments (ECF No. 10, pg. 11). However, the Claimant fails to assert <u>how</u> her obesity impacted her ability to work. The ALJ found that Claimant is severely impaired by osteoarthritis, bilateral knees, sleep apnea, bipolar disorder, depression and anxiety (Tr. at 14). Claimant's knee impairments do not meet or medically equal the criteria of 20 CFR 404, Subpart P, Appendix 1, Listing 1.02 Major dysfunction of a joint(s). To satisfy Listing 1.02, a major peripheral weight-bearing joint, such as a knee, would have to render an individual unable to ambulate effectively. The ALJ held that Claimant's knee impairment failed to meet or medically equal Listing 1.02 (Tr. at 17).

The ALJ found that Claimant's sleep related breathing disorder, sleep apnea, failed to meet the criteria required under Code of Federal Regulations' Listing 3.10. Claimant failed to meet required criteria of presenting clinical evidence of cor pulmonale with mean pulmonary artery pressure greater than 40mm HG or evidence that her sleep apnea is a result of an organic mental disorder. (*Id.*) The ALJ held that the severity of Claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04, affective disorders, and 12.06, anxiety related disorders. Although Claimant testified that

she had fallen asleep at work before, she testified that it was because she wasn't sleeping at night (Tr. at 44). In considering the severity of Claimant's sleep apnea under the criteria for Listings 12.04 and 12.06, the ALJ held that in activities of daily living, Claimant had no restrictions (Tr. at 18).

On December 29, 2009, Psychiatric Progress Notes found Claimant's mental status to be "friendly, attentive, communicative, casually groomed, overweight and relaxed" (Tr. at 320). It was noted that Claimant's mood and anxiety had improved. (*Id.*) Psychiatric Progress Notes on February 10, 2010, reported Claimant's mental status as neither depressed or anxious (Tr. at 322). The ALJ held that Claimant failed to demonstrate her mental impairments rendered her unable to work. The ALJ repeatedly noted Claimant's complaints about her job and her boss and held that Claimant admittedly searching for other employment in April 2010 "belies her assertions of disabling impairments and limitations" (Tr. at 22).

Credibility

With respect to Claimant's argument that the ALJ erred in finding that Claimant's obesity was not a severe impairment, the Court proposes that the presiding District Judge find that the ALJ's findings are supported by substantial evidence. 20 C.F.R. § 404.1529(b) (2012); SSR 96-7p, 1996 WL 374186 (July 2, 1996); *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996). A severe impairment must significantly limit the Claimant's ability to perform basic work activities. *See* 20 C.F.R. §§ 416.920(c) and 404.1520(c) (2012). The ALJ found that Claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, Claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extend they are inconsistent with the residual functional capacity assessment limiting Claimant to light level exertion (Tr. at 20).

Vocational Expert's Testimony

At the hearing, the ALJ asked Vocational Expert Harry T. Tanzey if a hypothetical individual had the same age, education and work experience as Claimant and has the RFC to perform work at a light exertion level with the same non-exertional limitations stated before, could perform jobs in the national and regional economy? Vocational Expert Tanzey testified that the hypothetical individual could perform jobs such as a price marker, hand packer and grader/sorter (Tr. at 67-68). Pursuant to SSR 00-4[5], the Vocational Expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.

Conclusion

For the reasons set forth above, it is hereby respectfully RECOMMENDED that the presiding District Judge AFFIRM the final decision of the Commissioner, DENY Plaintiff's Brief in Support of Judgment on the Pleadings and DISMISS this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED and a copy will be submitted to the Honorable Judge John T. Copenhaver, Jr. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B) and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is

---

[5] Social Security Ruling 00-4p: Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions.

15

made and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Copenhaver and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

Date: August 28, 2013.

Dwane L. Tinsley
United States Magistrate Judge